IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   v.<br><br>VIRTUAL CURRENCY SEIZED FROM<br>BINANCE USER ID 178147165,<br><br>   Defendant. | )<br>) Civil No. 4:23-cv-354<br>)<br>) VERIFIED COMPLAINT FOR<br>) FORFEITURE *IN REM*<br>)<br>)<br>) |

Plaintiff, United States of America hereby files and serves this VERIFIED COMPLAINT IN REM and alleges as follows:

## I. NATURE OF THE ACTION

1. This is an action to forfeit and condemn specific property, described as Virtual Currency Seized from Binance User ID 178147165, (hereinafter "Defendant Account") to the use and benefit of the United States of America ("Plaintiff") for its involvement in 18 U.S.C. § 1343 (wire fraud) and 18 U.S.C. §§ 1956-1957 (money laundering).

2. It is believed that evidence will show or will after a reasonable opportunity for further investigation and discovery, that the Defendant Account is forfeitable under federal law as set forth herein.

3. The United States believes the Defendant Account is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) as personal property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956 and § 1957.

4. The United States believes the Defendant Account is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), as personal property constituting

or derived from proceeds traceable to a violation of 18 U.S.C. § 1343 (wire fraud), which is a specified unlawful activity under 18 U.S.C. § 1956(c)(7)(A) and 18 U.S.C. § 1961(1).

## II.     DEFENDANT *IN REM*

5.     The Defendant *in rem* consists of the virtual currency seized by the Federal Bureau of Investigation (hereinafter the "FBI") on July 28, 2023, from the Defendant Account. At the time of seizure, the value of the assets in the Defendant Account was reported at approximately $29,326.44. Plaintiff notes the value of the account, and these sums, fluctuate, and the actual balance at any given time may be more or less than that set forth above.

## III.    JURISDICTION AND VENUE

6.     This Court has jurisdiction over this case, pursuant to 28 U.S.C. § 1345 (United States as plaintiff), as an action commenced by the United States of America, and pursuant to 28 U.S.C. § 1355(a) (Fine, penalty, or forfeiture), as an action for forfeiture.

7.     This Court has *in rem* jurisdiction and venue over the Defendant Account under 28 U.S.C. § 1355(b) and § 1395(b) as the acts or omissions giving rise to the forfeiture occurred in this district.

## IV.     FACTS

8.     This matter involved "virtual currency" and a scheme to defraud the victim of approximately $170,000.

9. Virtual currencies are digital tokens of value circulated over the Internet as substitutes for traditional "fiat currency."

10. Fiat currency is government-issued currency or money that is not backed by a physical commodity, such as gold or silver, but is backed by the government that issues it. The value of fiat currency is, in part, derived from the stability of the issuing government, rather than the worth of a commodity backing it. Most modern paper currencies are fiat currencies, including the U.S. Dollar, the Euro, and other major global currencies.

11. Virtual currencies are not issued by any government or bank like traditional fiat currencies but are generated and controlled through computer software. Bitcoin (hereinafter "BTC") is currently one of the most popular virtual currencies in use.

12. Virtual currency is a digital representation of value that functions as (i) a medium of exchange; (ii) a unit of account; and/or (iii) a store of value.

13. Virtual currency addresses are the digital locations to which such currencies are sent and received. A virtual currency address is analogous to a bank account number and is represented as a string of letters and numbers.

14. Binance Holdings Ltd., branded "Binance," is a global company that operates the largest exchange in terms of daily trading volume of virtual currencies (or "cryptocurrencies").

15. Virtual currency exchanges, like Binance, are trading and/or storage platforms for virtual currencies, such as BTC. Many exchanges also store their

3

customers' virtual currency in virtual currency accounts. These virtual currency accounts are commonly referred to as "wallets" and can hold multiple virtual currency addresses.

16. A digital currency wallet is a software application (or other mechanism) that provides a means for holding, storing, and transferring digital currency. A wallet holds the user's digital currency addresses, which allow the user to receive digital currency and private keys, which allow the user to transfer digital currency. The wallet also maintains the user's digital currency balance. A wallet provider is a person (individual or entity) that provides the software to create and manage wallets, which users can download. A hosted wallet provider is a business that creates and stores a digital currency wallet on behalf of a customer. Most hosted wallets also offer exchange and payments services to facilitate participation in a digital currency system by users.

17. Many virtual currencies, including BTC, publicly record all their transactions on what is known as a "blockchain." A blockchain is a distributed public ledger containing an immutable and historical record of every transaction utilizing that blockchain's technology. The blockchain can be updated multiple times per hour and records every virtual currency address that has ever received virtual currency and maintains records of every transaction and all the known balances for each virtual currency address. There are different blockchains for different types of virtual currencies.

18. Blockchain explorers are online tools that operate as a blockchain search engine allowing users the ability to search for and review transactional data for any addresses on a particular blockchain. The blockchain explorer uses a database to arrange and present the data to a user in a searchable format.

19. While the identity of a virtual currency address owner is generally anonymous, law enforcement can identify the owner of a particular virtual currency address by analyzing the blockchain. The analysis can also reveal additional addresses controlled by the same individual or entity.

20. Over the course of this investigation involved in this case, the FBI conducted detailed blockchain analyses, including from one or more commercial services offered by several different blockchain-analysis companies, to investigate specific virtual currency transactions connected to the scheme to defraud discussed herein.

21. On January 13, 2022, local law enforcement in the Southern District of Iowa notified the FBI about a virtual currency scam that occurred in Windsor Heights, Iowa, with then 84-year-old victim, DC.

22. On August 27, 2021, DC opened a cryptocurrency account with the cryptocurrency exchange Coinbase and immediately began purchasing a variety of cryptocurrency.

23. On or around October 6, 2021, DC tried to contact Coinbase customer service for the purpose of creating a wallet to secure the purchased cryptocurrency.

24. DC called a telephone number be believed belonged to Coinbase customer support, and he spoke with an UNKNOWN SUBJECT # 1, who stated she worked for Coinbase Support.

25. DC told UNKNOWN SUBJECT # 1 that DC had very limited computer and technology knowledge and was seeking someone from Coinbase to help him start and set up a virtual currency wallet.

26. UNKNOWN SUBJECT # 1 told DC to hang up and wait for a customer service person to call DC back.

27. Approximately two (2) minutes later, a person using the name "Mark from Coinbase" (UNKNOWN SUBJECT # 2) called DC and identified himself (UNKNOWN SUBJECT # 2) as a Coinbase employee who could help DC.

28. UNKNOWN SUBJECT # 2 told DC that UNKNOWN SUBJECT # 2 was a member of Coinbase's "Setup Team," that he would be DC's representative, and that he would help DC with anything he needed.

29. UNKNOWN SUBJECT # 2 instructed DC to download AnyDesk software to DC's computer to provide UNKNOWN SUBJECT # 2 with access to DC's computer.

30. AnyDesk is a remote desktop application that provides platform independent remote access to personal computers and other devices. Platform independent refers to software that runs on a variety of operating systems or hardware platforms. It is the opposite of platform dependent, which refers to software that is only to run on one operating system or hardware platform.

31. UNKNOWN SUBJECT # 2 convinced DC to allow UNKNOWN SUBJECT # 2 to create a Coinbase cryptocurrency wallet and conduct Coinbase transactions on DC's behalf. DC was, thereafter, unable to access this Coinbase wallet UNKNOWN SUBJECT # 2 created.

32. Prior to October 6, 2021, all Coinbase transactions funded by transfers from DC's personal bank account were conducted by DC acting alone.

33. UNKNOWN SUBJECT # 2 communicated with DC for weeks via telephone and email.

34. Between October 6, 2021, and December 8, 2021, forty transfers totaling $170,000.00, sent from DC's personal bank account into the Coinbase wallet created by UNKNOWN SUBJECT # 2, were conducted by UNKNOWN SUBJECT # 2 with DC's purported authorization.

35. At the time of these transfers, however, DC believed (incorrectly) that UNKNOWN SUBJECT # 2 was a Coinbase employee providing legitimate assistance to DC.

36. DC eventually started to become suspicious of UNKNOWN SUBJECT # 2 when DC was still unable to see his purported virtual currency purchases or access the wallet that UNKNOWN SUBJECT # 2 had supposedly set up for him.

37. In late 2021, when DC asked UNKNOWN SUBJECT # 2 why he could not see his purchases or access his account, UNKNOWN SUBJECT # 2

responded that UNKNOWN SUBJECT # 2 needed to correct some errors, and asked for four (4) days, after which he would show DC everything.

38. Thereafter, either UNKNOWN SUBJECT # 2 or an accomplice caused higher-dollar transactions to be made from DC's bank account into Coinbase, specifically an $8,000 transaction on 12/8/2021, two (2) transactions for $10,000 each on 12/13/2021, and a $50,000 transaction on 12/13/2021.

39. Soon, DC's bank contacted DC to advise that the bank had closed DC's bank account due to suspicions that the bank account had been compromised by someone else.

40. DC then contacted Coinbase to report the suspected fraudulent activity and request a hold be placed on the Coinbase account. DC reported the suspicious activity to local law enforcement on January 3, 2022.

41. On December 1, 2022, Coinbase provided account records associated with DC's Coinbase account that included all deposit, trade, and withdrawal transactions occurring between August 27, 2021, and December 23, 2021.

42. Hereinafter, the actions taken by people to defraud DC, including UNKNOWN SUBJECT # 1, UNKNOWN SUBJECT # 2, and perhaps others, are referred to as those of an "UNKNOWN CONSPIRATOR."

43. On October 17, 2021, an UNKNOWN CONSPIRATOR converted $2,473.00 of DC's money through Coinbase to 0.639883 Ether (ETH).

44. Ethereum, is a decentralized blockchain, and Ether or "ETH" is the native cryptocurrency of the platform. Among cryptocurrencies, ETH is second only to BTC in market capitalization.

45. On October 18, 2021, an UNKNOWN CONSPIRATOR converted $5,000 of DC's money through Coinbase to 1.305581 ETH.

46. On October 22, 2021, an UNKNOWN CONSPIRATOR converted $5,000 of DC's money through Coinbase to 1.242679 ETH. These three purchases totaled 3.188144 ETH.

47. On October 27, 2021, 3.188144 ETH was sent to receiving address 0x750c1627C442886BEC3A68E1dcC3e52D20352E9E (52E9E).

48. On November 5, 2021, an UNKNOWN CONSPIRATOR converted $12,746 of DC's money through Coinbase to 2.85039 ETH.

49. On November 16, 2021, an UNKNOWN CONSPIRATOR converted $10,784 of DC's money through Coinbase to 2.49158 ETH. These two purchases totaled 5.34197 ETH.

50. From November 6, 2021, to November 17, 2021, 5.34197 ETH was sent to receiving address 52E9E over three transactions.

51. After the funds were transferred to the deposit address ending in 52E9E, an UNKNOWN CONSPIRATOR associated with that address executed a series of transfers that resulted in ETH being routed to Binance deposit addresses.

52. Per a search of the public block chain, 52E9E received 13.00665 ETH from October 27, 2021, to January 31, 2023. As of February 1, 2023, this address had a balance of 0.00831 ETH.

53. Using publicly available block chain information, the FBI traced at least 7.1025 ETH from DC's Coinbase account to the Binance User ID 178147165 held at Binance.

54. The Defendant Account contained the deposit addresses held in multiple virtual currencies with total BTC equivalent to the value of 1.7197 BTC.

55. As of February 1, 2023, one Bitcoin was trading for $22,877.75. Thus, the total approximate value of the Defendant Account under investigation was then $39,342.87, which is significantly less than the amount of funds the UNKNOWN CONSPIRATORS fraudulently obtained from DC.

56. Beginning on January 19, 2023, an FBI special agent contacted Binance, requesting Binance to voluntarily provide account and ownership information associated with the following Binance virtual currency deposit address, specifically 0x321a160dc3327d6d0cfffb2f4a99c58fe43bd31b.

57. The FBI also asked for information concerning these transaction hashes:

> (a) 0x4eb5ee62e205e90649ebd837b369c74b7e507267abb0a9221ff128d2f70853d6; and
>
> (b) 0x0056762d0115b4ab01841203f0078cdc41ccea96bda9be9e8de93e9a445223fe.

58.  Based on the FBI's blockchain analysis in this investigation, this deposit address and these transaction hashes are associated with cryptocurrency transactions funded at least in part by funds fraudulently obtained by UNKNOWN CONSPIRATOR from D.C.

59.  Binance was asked to voluntarily restrain or freeze any funds in the Defendant Account as the matter was being investigated.

60.  On January 20, 2023, Binance provided spreadsheets that contained the requested account information.

61.  Binance records showed that the Defendant Account had received deposits from the following source addresses:

    (a)    0xe678a48911581b5764d8baf2393ae5478a323779; and

    (b)    0x750c1627C442886BEC3A68E1dcC3e52D20352E9E.

These are the addresses where DC's Coinbase account sent the 8.375 ETH from October 27, 2021, to November 17, 2021.

62.  Binance provided information showing that from November 2, 2021, to February 2, 2022, 7.1025 ETH transferred from the following addresses:

    (a)    0xe678a48911581b5764d8baf2393ae5478a323779; and

    (b)    0x750c1627C442886BEC3A68E1dcC3e52D20352E9E

was sent to a specific Binance deposit address:

    0x321a160dc3327d6d0cfffb2f4a99c58fe43bd31b.

This address was previously identified through the tracing of the ETH blockchain.

63. According to Binance's customer records, Binance User ID 178147165 belongs to Sonam Ahirwar, with a registration email address of manik.k.arora140@gmail.com, and with a government issued identification from India.

64. DC has never conducted business with Sonam Ahirwar and did not agree to transfer any of his funds or virtual currency to Sonam Ahirwar.

65. As of January 20, 2023, the Defendant Account contained the equivalent of approximately 1.96682116 BTC valued at approximately $41,413.

66. On February 14, 2023, a seizure warrant was issued by the U.S. District for the Southern District of Iowa for the Defendant Account. *See In the Matter of the Seizure of Entire Contents of Account Identified in Attachment A Held By Binance Holdings Limited,* No. 4:23-MJ-103.

67. On July 28, 2023, the United States took custody of the proceeds of the Defendant Account.

68. All of the funds in the Defendant Account when it was seized are tied back to the victim, DC.

## V.  COUNT ONE
## FORFEITURE UNDER 18 U.S.C. § 981(a)(1)(C)

69. Plaintiff repeats and realleges each and every allegation set forth above.

70. The United States has reason to believe the Defendant Account constitutes personal property which constitutes or is derived from proceeds

traceable to a violation of a specified unlawful activity under § 1956(c)(7) and § 1961(1), specifically wire fraud, under 18 U.S.C. § 1343.

71.     As a result of the foregoing, the Defendant Account is liable to condemnation and to forfeiture to the United States for its use, in accordance with 18 U.S.C. § 981(a)(1)(C).

## VI.  COUNT TWO
## FORFEITURE UNDER 18 U.S.C. § 981(a)(1)(A)

72.     Plaintiff repeats and realleges each and every allegation set forth above.

73.     The United States has reason to believe the Defendant account constitutes personal property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956 or § 1957, or any property traceable to such property..

74.     As a result of the foregoing, the Defendant Account is liable to condemnation and to forfeiture to the United States for its use, in accordance with 18 U.S.C. § 981(a)(1)(A).

## VII. CONCLUSION

WHEREFORE, the Plaintiff requests that the Court issue a warrant and summons for the arrest and seizure of the Defendant Account, that notice of this action be given to all persons known or thought to have an interest in or right against the property, that the Defendant Account be forfeited to the United States,

and that it be awarded its costs and disbursements in this action, and such other and further relief as the Court deems proper and just under the facts and applicable law.

Respectfully submitted,

Richard D. Westphal
United States Attorney

By: */Craig Peyton Gaumer*
Craig Peyton Gaumer
Assistant United States Attorney
U. S. Courthouse Annex,
Suite 286
110 East Court Avenue
Des Moines, Iowa 50309
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: craig.gaumer@usdoj.gov

## VERIFICATION

I, Matthew R. Thatcher, hereby verify and declare under penalty of perjury that I am a Special Agent of the Federal Bureau of Investigation, and that I have read the foregoing Verified Complaint *in Rem, United States v. Virtual Currency Seized from Binance User ID 178147165* and know the contents thereof and the matters contained in the Verified Complaint are true to my own knowledge, except for those matters not within my own personal knowledge and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds for my belief are the official files and records of the United States and information provided to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent of the Federal Bureau of Investigation.

Dated: September 22, 2023.

_____
Matthew R. Thatcher, Special Agent,
Federal Bureau of Investigation